Elias Garris, plaintiff in error, vs. The State of Georgia, defendant in error.

[1] The charge of the Court was not on an assumed state of facts, but upon the evidence.
[2] The evidence showed a wrongful taking by the prisoner.
[3] The evidence showed that the prosecutor was deprived of the possession.
[4] There was more than an attempt to steal; the larceny was consummated. It is immaterial that prisoner held possession but a short time.

Simple Larceny. In Dougherty Superior Court. Motion for new trial. Decided by Judge Cole. June Term, 1866.

*Evidence submitted by the State.*
*Turner A. Cleaves, says:* He knows the prisoner—first

saw him the forepart of the day the horses were stolen. About two months since they passed witness' house; on returning, stopped at witness' house, as his hands were going to work; appeared to watch the mules particularly; proposed to sell witness a mule; witness did not want the mule, as he knew it; saw them talking with the boy Lewis; soon they left, and Lewis went to his work.

Witness had a sorrel horse, and a dark colored horse mule taken from him. The mule worth $225, and the horse $125. After witness saw the man in consultation with Lewis, witness sent over to Albany after the Sheriff, who came about dark, and went down to the bridge and saw the horse and mule in possession of the prisoner and another. They had taken the harness off of their own mule, and were putting it on witness' mule, and were about hitching witness' mule to the buggy. When we went up, Mr. Kemp caught prisoner by the collar; took him and carried him to jail. The mule belonged to witness. This transaction occurred on the 6th day of April, 1866, in the county of Dougherty.

*Cross-examined.*—The mule and horse were taken from witness' lot. Did not oppose or give his consent to the mule going out of his lot. Told the negro that he should have nothing to do with the matter, one way or the other. Saw the mule after he was taken out of the lot, in possession of the prisoner; followed the walk of the horse and mule going down the road. Told the negro, he, witness, should have nothing to do with his taking the mule. Witness said to the negro that he would not alter their bargain. Did not see the horse and mule taken out of the lot, but believed when he followed, that they were his. Raised no objection to their going out of the lot. After the prisoner had left the negro, witness told him that he, witness, should have nothing to do with it. Witness sent for Mr. Kemp to see whether they should be carried or not. They were to be carried that night. Witness could have prevented the negro taking any the mules if he had taken his gun. Told the negro to carry out the bargain he had made with the prisoner; told

Garris vs. The State.

Kemp what the negro had said to him, witness, and asked Kemp to go with him and see whether he did or not. The boy Lewis carried the horse and mule to the prisoner. Lewis was at the time in witness' employment.

*James W. Kemp,* says: On Friday evening Mr. Helms came to him, and he went over to Mr. Cleaves'—got there about dark. After tea witness and Mr. Cleaves came down to Lemack's, who went with them. Saw the prisoner about harnessing Mr. Cleaves' mules; prisoner had all the harness on, except the breeching, and he was putting that down when witness grabbed him. He started to run as witness caught him. Took prisoner and brought him to jail. Found a buggy and mule and sorrel horse in their possession. The horse was the property of Mr. Cleaves.

*Cross-examined.*—He and Mr. Cleaves started off; witness with his shot gun. Mr. Cleaves told him of the arrangement.

Upon this evidence the jury found the defendant guilty, but recommended him to mercy, and the Court sentenced him to imprisonment in the Penitentiary for the term of ten years.

Prisoner's counsel moved for a new trial, on the following grounds, which were overruled by the Court:

1. Because the Court erred in its charge to the jury in this: that if they believed, from the evidence, that the defendant procured another to steal the mules, or entered into a conspiracy with another to do the act, then he was equally guilty, as though he had done it himself. The foregoing charge being upon an assumed state of facts, and not warranted by the evidence.

2–3. Because the jury found contrary to the evidence, in this: That there was no evidence of a wrongful or fraudulent taking, or any evidence showing that there was any intention to steal. That there was no evidence that the prosecutor was deprived of the possession of his property.

4. Because the jury found contrary to the charge of the Court, in this: That the Court charged that if there was only

an attempt to steal, and the crime was incomplete, then they could not find the prisoner guilty.

5–6.—Because the jury found contrary to law and evidence, without evidence, and against the charge of the Court.

The refusal of a new trial is alleged as error.

STROZIER & SMITH and G. J. WRIGHT, for plaintiff in error.

WARREN, (Solicitor General) for the State.

LUMPKIN, C. J.

[1.] We think the evidence fully warranted the first charge made by the Court. It is not made on an assumed state of facts. But the inference is legitimately drawn from the circumstances, that a bargain was made between the prisoner and the boy Lewis, for the latter to take the property and bring it to him.

[2.] Was not the testimony sufficient to show a wrongful and fraudulent taking, and the intention of prisoner to steal the property? Why not make the trade in open day, and in the presence of Cleaves, if honestly made with Lewis? Did the prisoner believe that the horse and mule belonged to Lewis? Did he not know that they were the property of the employer?

[3.] In reply to the argument that there was no evidence that the prosecutor was deprived of the possession, it is answered that it was removed from his lot and carried to some distance, in the early part of the night, and found in the possession of the prisoner, and that he was making arrangements to do something more, by substituting Cleaves' mule in the place of his own, by harnessing him to his buggy.

[4.] The charge of the Court was right, and the jury found in conformity therewith, instead of contrary to it. It was not merely an attempt to commit a larceny, but that attempt was consummated, as is shown by the proof offered. This is the old case of setting a trap to catch a thief, and succeeding in doing it.

Judgment affirmed.